MATTER OF LENNING

In Visa Petition Proceedings

A-24019786

*Decided by Board August 12, 1980*

A visa petition filed on behalf of an alien spouse is properly denied where the parties legally separated pursuant to the terms of a formal, written separation agreement notwithstanding fact that their marriage was entered into in good faith and had not been finally dissolved by an absolute divorce decree. *Chan* v. *Bell,* 464 F.Supp. 125 (D.D.C. 1978), and *Matter of McKee,* Interim Decision 2782 (BIA 1980), distinguished.

ON BEHALF OF PETITIONER:  Lydia Savoyka, Esquire
                         Migration and Refugee Services
                         1250 Broadway
                         New York, New York 10001

BY:  Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members. Dissenting Opinion, Farb, Board Member

The petitioner has appealed from the decision of a District Director, dated February 21, 1980, denying the visa petition filed on behalf of the beneficiary as his spouse under section 201(b) of the Immigration and Nationality Act, 8 U.S.C. 1151(b). The appeal will be dismissed.

The petitioner is a 65-year-old native and citizen of the United States. The beneficiary is a 61-year-old native and citizen of New Zealand and is the wife of the petitioner. They were married on July 13, 1974, in New York City. That the marriage was valid at its inception and entered into in good faith has not been put into question. However, on September 27, 1979, the petitioner and beneficiary entered into and executed a formal, written separation agreement in which they settled financial, property, and other rights between the parties. The visa petition was not filed until October 16, 1979, after the separation agreement took effect. It was solely on the basis of this separation agreement that the District Director denied the visa petition. The petitioner appeals from that finding, citing *Chan* v. *Bell,* 464 F.Supp. 125 (D.D.C. 1978) from which he asserts that a marriage entered into in good faith an still "legally unterminated" is sufficient to support a spouse's visa pe tion and eligibility for section 245 adjustment. We disagree.

476

In visa petition proceedings, the petitioner has the burden of establishing proof of the claimed relationship under which benefits are being sought. *Matter of Brantigan,* 11 I&N Dec. 493 (BIA 1966). Under section 204(b) of the Act, if an alien can show that the facts stated in a petition filed in his behalf as an immediate relative as defined in section 201(b) are true, he is entitled to admission in that status without regard to numerical limitations. This provision was included in the Act in order to prevent the separation of families and to preserve the family unit. H.R. Rep. No. 1365, 82d Cong., 2d Sess. 1680 (1952).

Previous Board decisions attempting to carry out the Congressional intent to retain and unite family relationships led the Board to apply a "viability" test to any marital relationship being put forth as the basis for conferral of immediate relative status as the spouse of a United States citizen. *See Matter of Lew,* 11 I&N Dec. 148 (D.D. 1965), *Matter of Sosa,* 15 I&N Dec. 572 (BIA 1976). However, the ability of the Board and Service to fairly determine which marriages are viable and which are not has been seriously questioned. *See Dabaghian v. Civiletti,* 607 F.2d 868 (9 Cir. 1979), *Chan v. Bell, supra.* Accordingly, we expressly overrode the viability test of *Matter of Sosa, supra,* within the Ninth Circuit, *Matter of Kondo,* Interim Decision 2781 (BIA 1980), and effectively put an end to the test as applied in *Matter of Sosa* in *Matter of McKee,* Interim Decision 2782 (BIA 1980). There we adopted the reasoning of the *Chan* court and held that where the parties enter into a valid marriage, and there is nothing to show that they have since obtained a *legal separation* or dissolution of that marriage, a visa petition filed on behalf of the alien spouse should not be denied solely because the parties are not residing together. Physical separation from one another had long been one of the key factors used in determining the viability of the marital relationship. At this time, physical separation after the marriage is a relevant factor only insofar as it bears upon the intent of the parties at the time of their marriage, *i.e.,* whether the marriage is a sham. *See Bark v. INS,* 511 F.2d 1200 (9 Cir. 1975).

However, the existence of a valid legal separation presents an altogether different set of considerations. The problems noted in *Chan, supra,* concerning the application of a viability standard for marriages are not present when there is presented a legal separation in which, with precise language, the appropriate documentation (*i.e.,* a separation agreement or separation decree from a court) renders the relationship of the parties as if they were not married at all. The separation agreement in the record before us presents us with such a situation.

The petitioner and beneficiary were married in the state of New

York on July 13, 1974. At the time their separation agreement was executed, they were both residents of the state of New York.[1] Under the law of New York, a married couple can obtain a divorce if

> (b) The husband and wife have lived separate and apart pursuant to a written agreement of separation, subscribed by the parties thereto and acknowledged or proved in the form required to entitle a deed to be recorded, for a period of one or more years after the execution of such agreement and satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such agreement.... [14 McKinney, Domestic Relations Law § 170(b)][2]

A divorce obtained on grounds of living apart pursuant to a written separation agreement is referred to as a "conversion divorce" in that it is permissible to convert the separation agreement into an absolute divorce decree. *Christian* v. *Christian*, 42 N.Y.2d 63, 396 N.Y.S.2d 817, 365 N.E.2d 849 (1977).

The separation agreement here states that the parties

> ... have heretofore separated and are now living separate and apart ... [and that] [t]he Husband and Wife shall continue to live separate and apart from each other, and each shall be free from interference, authority and control by the other, as fully as if he or she *were sole and unmarried*.... Neither of the parties shall interfere with the other in his or her respective liberty of action or conduct, and each agrees that the other may at any and all times reside and be in such place and with such relatives, friends and acquaintances as he or she may choose, and each party agrees that he or she will not molest the other or compel or seek to compel the other party to cohabit or dwell with him or her or institute any proceedings for the restoration of conjugal rights. [Separation Agreement, pp. 1-2] [Emphasis added.]

The agreement contains a division and settlement of their property, both real and personal, which shall be enjoyed "by him or separately as if he or she were unmarried." (Separation Agreement, p. 8). The husband-petitioner's obligation for maintenance and support is not to extend beyond a period of five years from the date the agreement took effect (p. 9). And while neither party is precluded from seeking an absolute divorce, the agreement is not to be merged with any divorce decree and instead, "shall survive the same and shall be binding and conclusive upon the parties for all time." (P. 15) The agreement also addresses matters concerning taxes, estates and its ultimate finality insofar as other jurisdictions and any heirs, next of kin, executors, administrators and other personal representatives are concerned.

The petitioner, through counsel, asserts that since the marriage has

---

[1] The record indicates that petitioner's current address is in Palm Beach, Florida. There is no indication concerning the current status of his property holding in New York City.

[2] The final requirement of the statute is that the agreement, or a memorandum thereof, be filed in the office of the clerk of the county wherein either party resides. Since this agreement was offered by the petitioner as proof of his support of the beneficiary, we assume compliance with this provision.

not yet been legally terminated the visa petition should have been approved. He cites *Chan, supra,* in support of that view. His reliance on that case is misplaced. The pertinent language in *Chan* states

The construction proposed by the Service is inherently incompatible with due process, as it would vest in that agency an unreasonably wide, and essentially *unreviewable,* discretion to determine which marriages are or are not viable. [At 129] [Emphasis added.]

We are not confronted here with the problem associated in applying an untenable standard of "inherent unworkability" in which the Service attempts "to establish the vague and elusive concept of marriage viability.. .." *Chan,* at 130. Courts routinely review the terms of separation agreements and therefore Service decisions based on such agreements may be subject to review by the courts on appeal. Hence, the fears of unreviewability alluded to in *Chan* are not present in the instant case. And in New York, where there has been full disclosure of all relevant facts in proper context and no inequitable conduct or other infirmity which might vitiate the execution of the agreement, the courts are encouraged to fully uphold the agreement. *Christian* v. *Christian, supra.*

It is also of no small import that *Chan* made reference to the distinctions we have noted here. There, it was pointed out that

It is equally undisputed that, although the parties now live apart, no divorce or *legal separation* has taken place and no proceedings for divorce or *legal separation* have been instituted. [At 127] [Emphasis added.]

Thus, our holding here today is not based upon any notion of the viability of the marriage, but rather is determined on the basis of the separation agreement between the petitioner and beneficiary. Since it is clear that the Congressional policy of retaining and uniting family relationships will not be furthered through the issuance of an immigrant visa to the beneficiary, the decision of the District Director to deny the visa petition was correct and the appeal shall be dismissed.

ORDER: The appeal is dismissed.

DISSENTING OPINION: Ralph Farb, Board Member

I respectfully dissent.

The Board, which only recently declared in *Matter of McKee,* Interim Decision 2782 (BIA 1980), that it would no longer deny a visa petition solely because the spouses were separated under conditions making the marriage appear to be no longer viable, has backslided. Seizing on two aspects of this particular New York case, the Board pretends to distinguish *Chan* v. *Bell,* 464 F.Supp. 125 (D.D.C. 1978), from which *McKee* is derived.

Although we said in *McKee* that the separation of spouses is a relevant fact only as evidence, and that the only ultimate fact for petitioner to establish is that the marriage was bona fide in its inception, the Board is once again fatally attracted to the proposition that it will be carrying out the will of Congress if it strikes down petitions when granting them would not serve to retain and unite family relations. It justifies this by suggesting that a written separation agreement is a big step closer to dissolution of a marriage than uncontracted separation is. It also points to a peculiarity of New York law that when parties have been separated for over one year following execution of a separation agreement either may sue for divorce on that ground alone. *Domestic Relations Law*, section 170(6).

New York, after being the last of the 50 states to permit divorce on only one ground, adultery, has now gone to the other extreme. Of the six permitted grounds for divorce in section 170, two are "no-fault." To show how far New York has gone in liberality, I quote from American Jurisprudence 2d, *Divorce and Separation*, section 148:

> In the absence of a statute specifically so providing, the fact that husband and wife have lived separate and apart, for however long a time, is not a ground for divorce. In many jurisdictions, however, the statutes authorize an absolute divorce where there has been a separation and the husband and wife have lived apart for a specified length of time. The policy of these statutes is based on the proposition that where a husband and wife have lived apart *for a long period of time*, without any intention ever to resume conjugal relations, the best interests of society and the parties themselves will be promoted by a dissolution of the marital bond. (Underscoring supplied.)

It is significant that unlike the norm next stated in American Jurisprudence, that divorce based on separation usually requires at least double the period of waiting specified for divorce based on desertion, New York will permit a suit after a waiting period of one year on *either* of these grounds.

All the same, the marital bond is not dissolved by mere separation, either with or without a separation agreement. The premise on which the Board's interpretation rests, that people who execute separation agreements are set irreversibly on a permanent course away from each other is unsound. There are cases both ways. Sometimes the parties will reconcile and resume marital relations. From this a court may even infer an intent to abandon the separation agreement. *In re Whiteford's Estate*, 35 A.D.2d 751, 314 N.Y.S.2d 811, App. Div. 3d Dept. (1970); *cf. Will of Granchelli*, 90 Misc.2d 103, 393 N.Y.S.2d 894, Surrogates Ct. Monroe Cty. (1977).

Even if the separation agreement herein were in existence for over a year, there would be no normal and natural inference that the parties will never effect a reconciliation as married partners. The court in *Chan* questioned both our right and our wisdom in speculating on that.

480

So did the Court in *Bark* v. *INS,* 511 F.2d 1200 (9 Cir. 1975). Nothing in the statute suggests a "viability" test. The key statement in *Chan* is, "In the first place, an agency's interpretation cannot vary the plain words of a statute..." 464 F.Supp. at 131.

The fact that New York State has reduced the waiting period for a divorce based on a separation agreement to as little as one year should have the cautionary effect of inhibiting inferences that the parties to any separation agreement intend never to resume marital relations. Such short-term data as is found here is clearly insufficient for any "viability" conclusion. Instead, dazzled by the cleverness of the phrase "conversion divorce," the Board blunders into a repetition of its pre-*McKee* error.

I would sustain the appeal and grant the petition.