# United States Tax Court

T.C. Memo. 2022-115

JASON TODD REYNOLDS AND KELLI HUNTER REYNOLDS,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 14433-16.                          Filed November 30, 2022.

————————

Jason Todd Reynolds and Kelli Hunter Reynolds, pro sese.

*Victoria E. Cvek*, *David A. Indek*, and *Nancy M. Gilmore*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, *Judge*: Respondent determined deficiencies in petitioners' federal income tax and additions to tax and penalties for 2004–07 (years in issue) as follows:

| [*2] Year | Deficiency | Additions to Tax / Penalties | |
| | | § 6651(a)(1) | § 6663[1] |
| --- | --- | --- | --- |
| 2004 | $39,865 | $9,216 | $29,899 |
| 2005 | 51,739 | 12,070 | 38,804 |
| 2006 | 60,979 | 14,448 | 45,734 |
| 2007 | 74,019 | — | 55,514 |

Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar. The sole issue for decision is whether petitioner wife is entitled to innocent spouse relief pursuant to section 6015.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Stipulation of Facts and attached Exhibits are incorporated herein by this reference. Petitioners resided in Maryland when they timely filed their Petition.

Petitioners married in April 2002 and are the parents of five children. During the years in issue petitioners lived in a five-bedroom home and owned four cars. They also went on family vacations at least once per year. Three of their children attended private school.

Before her marriage, petitioner wife obtained a law degree from the University of Maryland and became licensed to practice in Maryland. In the years preceding those in issue, she worked for a small firm in Baltimore focusing on wrongful death, predatory lending, and accountant malpractice cases. She thereafter worked as a staff attorney for the National Association for the Advancement of Colored People.

---

[1] The section 6663 penalties are determined only against petitioner husband, Jason Todd Reynolds.

**[*3]**     During the years in issue petitioner wife primarily stayed at home with the children. In her spare time she operated a solo legal practice out of the family's basement where she represented clients in small business and family law matters. She took a position with the Department of Justice's voting rights division in 2009. Since December 2014 petitioner wife has been working for the U.S. Department of Agriculture as an equal opportunity specialist. She earns approximately $143,000 per year.

From 2001 to 2008 petitioner husband was employed as the director of finance for National City Christian Church (church), which paid him average annual wages of approximately $95,000. His wages were paid at regular biweekly intervals via direct deposit. During the years in issue petitioner husband improperly wrote checks to himself out of the church's checking account and misused the corporate credit card. His wages and the embezzled funds were deposited into two bank accounts held jointly by petitioners. The checks he wrote for himself were similar to the amounts in his biweekly wages yet deposited at irregular intervals. As a result of these actions, he was indicted and subsequently sentenced to 97 months in prison for embezzlement. While petitioner husband was incarcerated, petitioner wife gave birth to their fifth child.

Petitioner husband handled the family's finances, which included preparing yearly tax returns as well as making home mortgage and vehicle payments. He used funds from their jointly held bank accounts to cover their expenses and to purchase gifts for his wife, such as a vintage coat, a diamond anniversary ring, and a designer handbag. Petitioner wife took care of the children and their home. This included shopping for household items, purchasing the children's things, and paying private school tuition. Her purchases were also made from their jointly held bank accounts.

While petitioner husband was incarcerated in 2013, petitioner wife filed for chapter 7 bankruptcy. She received a discharge of her debts in 2014 but lost the family home to foreclosure. Because of the loss of their home, petitioner wife and the children moved in with her parents where they remained until she was able to purchase a new home in July 2016. After being released from prison in May 2018, petitioner husband returned to live with petitioner wife and his family in their new home; he continues to live there. The couple did not divorce or legally separate throughout petitioner husband's prison sentence and remained married as of the date of trial

**[\*4]**   Petitioner husband filed income tax returns electronically for the years in issue with the approval of petitioner wife.  Petitioners untimely filed their 2004 through 2006 income tax returns and timely filed their 2007 return.  They did not include petitioner wife's unemployment compensation, legal fees, or interest income.  Neither did they account for her self-employment taxes and erroneously claimed deductions for the legal practice, as well as some jointly attributable items (e.g., child tax credits).

On April 2, 2014, petitioner wife timely filed Form 8857, Request for Innocent Spouse Relief.  On June 1, 2017, respondent denied that request.  Petitioners have conceded the deficiency amounts, additions to tax, and penalties.

OPINION

Generally, married taxpayers may elect to file a joint federal income tax return.  § 6013(a).  After this election is made, each spouse is jointly and severally liable for the entire tax due for that taxable year.  § 6013(d)(3).  Section 6015 provides a spouse with three alternatives for relief from joint and several liability: full or partial relief under subsection (b), proportionate relief under subsection (c), and, if relief is not available under either subsection (b) or (c), equitable relief under subsection (f).  Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief.  Rule 142(a); *Alt v. Commissioner*, 119 T.C. 306, 311 (2002), *aff'd*, 101 F. App'x 34 (6th Cir. 2004).

This Court has jurisdiction to review respondent's denial of petitioner wife's request for liability relief.  *See* § 6015(e)(1)(A).  We apply a de novo standard of review as well as a de novo scope of review.[2]  *See Sutherland*, 155 T.C. at 106; *Porter v. Commissioner*, 132 T.C. 203, 210 (2009).

I.     *Section 6015(b)*

To qualify for relief under section 6015(b)(1), the requesting spouse must satisfy the following conditions:  (A) a joint return has been made for a taxable year; (B) on such return there is an understatement

---

[2] The Petition in this case was filed before Congress enacted section 6015(e)(7), which generally limits our review to the administrative record.  Section 6015(e)(7) does not apply to petitions filed before July 1, 2019.  *Sutherland v. Commissioner*, 155 T.C 95, 105–06 (2020).  Thus, the scope of review remains de novo.

**[\*5]** of tax attributable to erroneous items of the nonrequesting spouse; (C) the requesting spouse did not know and had no reason to know of the understatement at the time the return was signed; (D) taking into account all of the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the deficiency; and (E) the requesting spouse timely elects relief. These five conditions are conjunctive; the failure to satisfy any one condition precludes relief under section 6015(b). *Rogers v. Commissioner*, T.C. Memo. 2018-53, at \*100–01; *Haltom v. Commissioner*, T.C. Memo. 2005-209. Respondent contends that petitioner wife has failed to satisfy the requirements of section 6015(b)(1)(B), (C), and (D).

A.      *Portions of Understatements Attributable to Petitioner Wife*

Respondent asserts that petitioner wife is not entitled to section 6015(b) relief because certain erroneous items that led to the tax understatements are attributable to her. *See* § 6015(b)(1)(B). For the years in issue petitioners' returns did not include petitioner wife's unemployment compensation, legal fees, or interest income. They also did not account for her self-employment taxes and erroneously reported deductions for her legal practice as well as some jointly attributable items.

Since a portion of each tax understatement is attributable to petitioner wife, she may not obtain relief under section 6015(b) for that portion of the understatement. As for the remaining items, respondent concedes that each understatement is solely attributable to petitioner husband and therefore section 6015(b)(1)(B) is satisfied for that portion of each.

B.      *Knowledge or Reason to Know of Understatements*

Respondent argues that petitioner wife has not satisfied section 6015(b)(1)(C), which requires that she did not know or have reason to know of the tax understatements when she signed the returns. A requesting spouse has knowledge or reason to know of an understatement if she actually knew of the understatement or if a reasonable person in similar circumstances, at the time she signed the return, could be expected to know that the return contained an understatement. *Hopkins v. Commissioner*, 121 T.C. 73, 77 (2003); Treas. Reg. § 1.6015-2(c). Consequently, the requesting spouse may have a duty of inquiry with regard to the return. *Butler v. Commissioner*, 114 T.C. 276, 284 (2000), *abrogated on other grounds*

[*6] *by Porter*, 132 T.C. 203. This duty is subjective, and its focus is on the requesting spouse. *Id*. The following factors are considered relevant in deciding whether a spouse had reason to know of an understatement: (1) the alleged innocent spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past income levels, income standards, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. *Id.*

Petitioner wife argues that she did not know or have reason to know of the understatements when she signed the returns. We disagree. During the years in issue petitioners maintained two jointly held bank accounts. Both petitioner husband and petitioner wife used these accounts to cover various household expenses. In one of the accounts, there were biweekly direct deposits coming from the church. In that same account there were other customer deposits of similar amounts being made at irregular intervals. The combined effect was that petitioner husband's income was almost twice what it should have been.

Petitioner wife claims that she had little involvement in the family's financial affairs and was not responsible for their tax reporting. She testified, however, that during the years in issue she reviewed the Forms 1040, U.S. Individual Income Tax Return, before signing them. Having done so—and having been responsible for many household purchases—she should have known that their income would far exceed that which they reported. During this time petitioner wife was a licensed attorney in the State of Maryland operating her own legal practice. Although she practiced in nontax fields, we think that her legal training would nonetheless have alerted her to a likely understatement.

Petitioner wife contends that the family's expenditures during the years in issue were not unusual or lavish. She also asserts that petitioner husband's furtive efforts to cover up his embezzlement belie respondent's conclusion that she should have known about the understatements. To the first point, petitioners have not put forth any evidence regarding their expenditures before the years in issue. We therefore cannot accord that argument any weight here. As to her second argument, we are not persuaded. While it is true that petitioner husband did not tell his wife outright that he was embezzling money from his employer, he did not go to great lengths to hide it. He simply wrote checks to himself which he deposited in petitioners' joint bank accounts. This seems neither evasive nor deceitful.

**[\*7]**    The foregoing leads us to the conclusion that petitioner wife had a duty to inquire about the amount of income reported on the returns. Since she failed to inquire, she is deemed to have constructive knowledge of the understatements and is not entitled to section 6015(b) relief. *See Porter*, 132 T.C. at 211–12.

C.    *Whether It Would Be Inequitable to Hold Petitioner Wife Liable*

It would not be inequitable to hold petitioner wife liable for the understatements even if she lacked knowledge or a reason to know of them. To determine whether inequity exists, we examine the same factors as those used in determining whether relief is available under section 6015(f). *See Alt*, 119 T.C. at 316; *Jones v. Commissioner*, T.C. Memo. 2010-112. Under section 6015(f) we consider the nonexclusive factors provided in Revenue Procedure 2013-34: (1) marital status; (2) economic hardship; (3) in the case of understatement, knowledge or reason to know of the item giving rise to the understatement; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health. Rev. Proc. 2013-34, § 4.03(2), 2013-43 I.R.B. 397, 400–03.

We have previously found that petitioner wife had reason to know of the understatements, which weighs against relief. Marital status and legal obligation are both neutral because petitioners are still married. Petitioner wife did not proffer any evidence of poor mental or physical health at the time the returns were filed or when she requested relief. This factor is neutral as well.

Respondent asserts that petitioner wife has not made a good faith effort to comply with the income tax laws following the years in issue. She failed to timely pay her 2011 tax liability and understated her income for 2013, which led respondent to issue a notice of deficiency and impose a penalty for that year. She ultimately agreed with respondent's determinations. This factor weighs against relief.

Petitioner wife argues that upholding her joint liability for the understatements and penalties will cause her economic hardship. Although we are sympathetic to her situation as the sole earner for a family of seven, we do not think she has met her burden of proof as to this factor. Economic hardship is examined as of the trial date. *Pullins v. Commissioner*, 136 T.C. 432, 446–47 (2011). At that time petitioner wife was a GS–14 employee with the U.S. Department of Agriculture

[*8] earning approximately $143,000 annually.  This is roughly $6,400 per month after taxes per her calculations.  She estimated her monthly expenses to be approximately $10,000.

We accept as fact her stated income amount as that is independently verifiable.  However, we do not find her expense estimate reliable.  Revenue Procedure 2013-34 provides that economic hardship exists "if satisfaction of the tax liability . . . will cause the requesting spouse to be unable to pay *reasonable basic living expenses*."  Rev. Proc. 2013-34, § 4.03(2)(b), 2013-43 I.R.B. at 401 (emphasis added).  Many of the expenses listed exceed what can be considered reasonable or basic in necessity.  There is no substantiation of these costs beyond the tabulations provided.  For those reasons, petitioner wife has failed to carry her burden of proof as to the economic hardship factor.

Finally, respondent contends that petitioner wife has derived a significant benefit from the understatements.  A significant benefit is any benefit in excess of normal support.  *Id.* § 4.03(2)(e), 2013-43 I.R.B. at 402.  During the years in issue, petitioners lived in a five-bedroom house, owned four cars, sent their children to private school, and took vacations.  Petitioner wife also received several luxury fashion items as gifts from her husband.  Although we believe the family home was not significant given the number of people requiring housing, the remainder of their expenditures exceeded normal support.  Petitioner wife benefited from those luxuries during the years in issue, and therefore this factor weighs against relief.

On the basis of this analysis, we find that it would not be inequitable to hold petitioner wife liable for the tax understatements and associated penalties.  She is not entitled to section 6015(b) relief.

II.     *Section 6015(c)*

Under section 6015(c), if the requesting spouse is no longer married to or is legally separated from the spouse with whom she filed the joint return, she may elect to limit liability for a deficiency as provided in section 6015(d).  § 6015(c)(1), (3)(A)(i)(I); *DeMattos v. Commissioner*, T.C. Memo. 2010-110, 2010 WL 1980315, at *4.  The requesting spouse may also elect proportionate relief if she was not a member of the same household as the nonrequesting spouse during the 12-month period ending on the date such election was filed. § 6015(c)(3)(A)(i)(II).

**[*9]** Petitioners have remained married at all relevant times. Petitioner wife argues, however, that she is entitled to relief because under Maryland law they became legally separated during petitioner husband's incarceration. She alternatively argues that they were not members of the same household during that time. We disagree with both arguments.

Under Maryland law, there are only two types of judicially sanctioned marital dissolutions: an absolute divorce and a limited one. *See Afeta v. Gonzales*, 467 F.3d 402, 407 (4th Cir. 2006) (citing Md. Code Ann., Fam. Law §§ 7-102, 7-103 (2006)). Each type of divorce requires a judicial decree to be effective. *See* Md. Code Ann., Fam. Law §§ 7-102, 7-103 (West 2022). Petitioners do not assert that they ever obtained a judicial decree of legal separation. We therefore reject that argument as providing grounds for section 6015(c) relief.

We similarly reject petitioner wife's argument that she had not been a member of the same household as her husband during the 12-month period ending on the date she elected section 6015 relief. The regulations provide that a requesting spouse and a nonrequesting spouse "are considered members of the same household during either spouse's temporary absences from the household if it is reasonable to assume that the absent spouse will return to the household, and the household or a substantially equivalent household is maintained in anticipation of such return." Treas. Reg. § 1.6015-3(b)(3)(i).

Petitioner husband's period in federal prison is considered a temporary absence. *Id.* ("Examples of temporary absences may include, but are not limited to, absence due to *incarceration*, illness, business, vacation, military service, or education." (Emphasis added.)). Petitioners therefore remained members of the same household during that time. Petitioner wife further argues that because she lost her home to foreclosure during petitioner husband's incarceration, no substantially equivalent home was maintained and thus it was not reasonable to assume that he would return to the household. Though this argument is compelling, we again disagree.

Petitioner wife was pregnant with the couple's fifth child while petitioner husband was incarcerated, and petitioners do not assert that they made any formal attempt at ending their marriage or legally separating. On the basis of those facts, we think it was reasonable to assume that petitioner husband would return to the family household—wherever that might have been—upon his release. Our conclusion is

**[\*10]** bolstered by the fact that petitioner husband did in fact immediately return to live with his wife and children at that time. Accordingly, petitioner wife is not entitled relief under section 6015(c).

III.    *Section 6015(f)*

Section 6015(f) provides an alternative means of relief for a requesting spouse who does not otherwise qualify under section 6015(b) or (c).  *Porter*, 132 T.C. at 206.  Section 6015(f)(1) permits relief from joint and several liability if it would be inequitable to hold the requesting spouse liable for any unpaid tax or deficiency.  Under section 6015(f) the Secretary may grant equitable relief to a requesting spouse on the basis of the facts and circumstances.

The Commissioner issued Revenue Procedure 2013-34 to provide guidance for determining whether a taxpayer is entitled to equitable relief from joint and several liability.  Rev. Proc. 2013-34, § 1.01, 2013-43 I.R.B. at 397.  While the Court may consider the guidance set forth in Revenue Procedure 2013-34, we are not bound by it; our determination ultimately rests on an evaluation of all the facts and circumstances.  *See Pullins*, 136 T.C. at 438–39; *Johnson v. Commissioner*, T.C. Memo. 2014-240, at \*10.

Revenue Procedure 2013-34 provides a three-step analysis for evaluating a request for equitable relief.  The first step consists of seven threshold conditions that must be met.  Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. at 399.  Respondent concedes that petitioner wife meets the seven threshold conditions for the portions of the deficiencies attributable to petitioner husband.  The second step of the analysis provides three conditions that must be met to qualify for a streamlined determination of relief under section 6015(f).  *Id.* § 4.02, 2013-43 I.R.B. at 400.  The first condition is that the requesting spouse is no longer married to the nonrequesting spouse.  *Id.* § 4.02(1).  Since petitioners are still married, petitioner wife does not qualify for a streamlined determination.

A third step is available if the requesting spouse satisfies the threshold conditions but fails to satisfy the conditions for a streamlined determination.  A requesting spouse may still be eligible for equitable relief under section 6015(f) if, after taking into account all of the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid tax or deficiency.  *Id.* § 4.03.  We previously considered the factors in determining whether to grant equitable relief

**[\*11]** in our analysis of section 6015(b)(1)(D) and held that petitioner wife is not entitled to equitable relief. *See supra* Part I.C. For the same reasons, she is not entitled to relief pursuant to section 6015(f).

IV.    *Bankruptcy Case*

At trial petitioner wife argued that the chapter 7 discharge she obtained in 2014 resolved the tax debts at issue. On brief she alternatively asserts that respondent abused his discretion by failing to consider her bankruptcy case in deciding whether she was entitled to section 6015 relief. Neither of these arguments has merit.

The Tax Court does not have jurisdiction to adjudicate whether a tax, fine, penalty, or addition to tax was discharged under the Bankruptcy Code. *Neilson v. Commissioner*, 94 T.C. 1, 9 (1990); *Ashmore v. Commissioner*, T.C. Memo. 2016-36, at \*8. And we do not consider any matters occurring at the administrative level before the notice of deficiency was sent. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327–28 (1974). For those reasons, we reject petitioner wife's arguments regarding the bankruptcy case.

V.    *Conclusion*

On the basis of the facts and circumstances presented, we conclude that petitioner wife is not entitled to innocent spouse relief under section 6015(b), (c), or (f). She remains jointly and severally liable for the deficiencies, additions to tax, and associated penalties.

We have considered all arguments made, and to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*