[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 06-13976

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 20, 2007
THOMAS K. KAHN
CLERK

BIA No. A34-090-878

DAVID ANTHONY HOSKINS SAINT CLAVER.,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order
of the Board of Immigration Appeals
_____

**(August 20, 2007)**

Before EDMONDSON, Chief Judge, CARNES and FAY, Circuit Judges.

PER CURIAM:

Petitioner David Anthony Hoskins Saint Claver ("Petitioner") petitions for review of the immigration judge's ("IJ") order of removal as an alien convicted of two or more crimes of moral turpitude, an aggravated felony, and a drug

trafficking crime, pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(ii), (iii), and (a)(2)(B)(i). Petitioner contends that he is not subject to removal because he derived United States citizenship through the naturalization of his mother. We conclude that no reversible error exists; we deny the petition.

Petitioner, a native of Jamaica, entered the United States as an immigrant in 1972. Petitioner's mother, who had resided in the U.S. since 1969, became a naturalized citizen in 1977, when Petitioner was 17 years old. Petitioner did not apply for derivative citizenship at that time. In 2005, the Department of Homeland Security issued a Notice to Appear, charging Petitioner with removability based on numerous drug convictions Petitioner sustained in New York and Florida. At a hearing before the IJ, Petitioner claimed that he was not an alien subject to removability because he derived U.S. citizenship through his mother pursuant to former section 237(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1432(a) (1981) (repealed 2000), which allowed a child born outside of the U.S. to alien parents to become a citizen under certain circumstances.[1]

---

[1] Because this provision was in effect when Petitioner's mother naturalized, it governs Petitioner's claim for citizenship in this matter. See Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001) (looking "to the applicable law in effect at the time of appellant's birth" where "[a]ppellant claim[ed] that his father, who was a United States citizen at birth, transmitted citizenship to appellant" at appellant's birth).

The evidence showed that Petitioner's parents were married in Jamaica in 1960, but separated in 1963, at which time Petitioner's mother removed herself and her children from the marital home. Although Petitioner's parents were not formally divorced until 1992, when Petitioner's mother sought a divorce from a Florida court, Petitioner's father remarried another woman in 1965.

Without making a clear determination about the marital status of Petitioner's parents at the time of his mother's naturalization, the IJ concluded Petitioner was not a U.S. citizen because there was no formal documentary evidence that Petitioner's mother had legal custody at the time of her naturalization. Petitioner, who was represented at the hearing, waived his right to appeal the IJ's order, but nonetheless filed a timely pro se appeal to the Board of Immigration Appeals ("BIA"), challenging only the IJ's nationality decision. The BIA dismissed the appeal, concluding that it did not have jurisdiction because of Petitioner's appeal waiver. Petitioner now seeks review of the BIA's order dismissing his appeal and the IJ's order of removal.[2]

To the extent that the removal order is based on a legal determination, we review that decision de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48

_____

[2]Because we reach the merits of Petitioner's nationality claim, we do not address Petitioner's argument that the BIA erred in dismissing Petitioner administrative appeal because his appeal waiver was not knowing and voluntary.

(11th Cir. 2001); see also 8 U.S.C. § 1252(b)(5)(A) (stating that the court of appeals "shall" decide a nationality claim where there is no genuine issue of material fact). We will, however, defer to the BIA's statutory interpretation if it is reasonable and does not contradict the clear intent of Congress. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 104 S. Ct. 2778, 2781-82 (1984). In reviewing a claim for citizenship, we must be mindful that "the burden is on the alien applicant to show his eligibility for citizenship in every respect" and that "doubts should be resolved in favor of the United States and against the claimant." See Berenyi v. Dist. Director, INS, 87 S. Ct. 666, 671 (1967) (internal quotation marks and citation omitted).

Petitioner contends that he received derivative citizenship at his mother's naturalization in 1977 pursuant to former section 321(a) of the INA, 8 U.S.C. § 1432(a), which stated that an alien child became a U.S. citizen upon the "naturalization of the parent having legal custody of the child when there has been a legal separation of the parents" if the naturalization occured when the child is under 18 years of age and the child was residing in the U.S. as a lawful permanent resident at the time. The parties do not dispute that Petitioner meets the last two requirements; the only matters in dispute are whether Petitioner's parents were

"legally separated" and whether Petitioner was in the "legal custody" of his mother at the pertinent time.

The meaning of the term "legal separation" is a question of federal statutory interpretation. Minasyan v. Gonzales, 401 F.3d 1069, 1076 (9th Cir. 2005); Brissett v. Ashcroft, 363 F.3d 130, 133 (2d Cir. 2004); Wedderburn v. INS, 215 F.3d 795, 799 (7th Cir. 2000). Every circuit court to consider this question has concluded that, to qualify as a "legal" – rather than "informal" separation – some formal action must operate to dissolve or alter the marital relationship by operation of law. See Morgan v. Att'y Gen., 432 F.3d 226, 231-32 (3rd Cir. 2005) (reviewing cases); see also Brissett, 363 F.3d at 134 (noting that "[a] contrary interpretation would render superfluous the provision's specification that the separation must be 'legal'"). But the courts have not all agreed on what form that formal action must take. Morgan, 432 F.3d at 232. The Fourth, Fifth, and Seventh Circuits appear to have limited the formal action to judicial decrees of limited or absolute divorce or separation, in accordance with the INS's interpretation of the statutory term in Matter of H-, 3 I. & N. Dec. 742 (BIA 1949). See Afeta v. Gonzales, 467 F.3d 402, 408 (4th Cir. 2006) Nehme v. INS, 252 F.3d 415, 425-27 (5th Cir. 2001); Wedderburn, 215 F.3d at 795, 799-800.

The Second and Third Circuits, however, have interpreted Matter of H- more broadly to require "only a legal alteration," Brissett, 363 F.3d at 135, or a "formal[] modif[ication]," Morgan, 432 F.3d at 232, of the petitioner's parents' marital relationship and recognize that a "legal" separation may occur through other formal – but nonjudicial – procedures that effectuate a divorce or separation by operation of law. Morgan, 432 F.3d at 234 n.4 ("[N]othing in the language of the statute . . . requires that a court must act for a legal separation to exist."); Brisset, 363 F.3d at 134 n.3; see also Minasyan, 401 F.3d at 1079 n. 19 (suggesting agreement with the Brissett court's interpretation but not reaching the issue). We conclude that it is unnecessary for us to attempt to resolve – or to add to – this disagreement among the circuits here, because Petitioner cannot satisfy even this more lenient interpretation of "legal separation."

"[W]here the term in question involves a legal relationship that is created by state or foreign law, the court must begin its analysis by looking to that law." Minasyan, 401 F.3d at 1076 (citing De Sylva v. Ballentine, 76 S. Ct. 974, 974 (1956)). Thus, whether Petitioner's parents were "legally separated" at the time of his mother's naturalization should be informed by the law of the state or country with jurisdiction over Petitioner's parents' marriage. Id; see also Morgan, 432 F.3d at 232; Brissett, 363 F.3d 134; Wedderburn, 215 F.3d at 799 (noting that "the

6

INS determines the existence, validity, and dissolution of wedlock using the legal rules of the place where the marriage was performed (or dissolved)"). But see Nehme, 252 F.3d at 423-26 ("reject[ing] any contention that the law of any one state should govern the determination whether an alien child's parents were 'legally separated'" and instead looking to the generally accepted meaning of that term in United States jurisprudence).[3] If Jamaica (or some other relevant jurisdiction) recognized the separate legal existence of the marital parties at the pertinent time, then we should presumptively consider the parties to be "legally separated" under the INA. Brissett, 363 F.3d at 134; cf. Morgan, 432 F.3d at 233-35 ("Petitioner has failed to produce any evidence of a court decree or any other formal government action establishing that her parents were separated by action of law.").[4]

---

[3]As the Third Circuit noted in Morgan, the Fifth Circuit's approach on this point in Nehme "is inadequate because of the lack of focus on the forums that actually possess the power to decree that a separation recognized and enforceable by law has occurred." Morgan, 432 F.3d at 232.

[4]We say "presumptively" to account for those limited circumstances in which the rule of the state or country with jurisdiction over the marriage may use the term "legally separated" "in a way entirely strange to those familiar with its ordinary usage;" in such cases, the state or foreign rule might not control our interpretation of this term. See De Sylva, 76 S. Ct. at 980. For example, both the Second and Ninth Circuits have noted that "some orders that the relevant state or nation might not characterize as creating a legal separation may nonetheless effect such a drastic change in the couple's marital existence that the couple may be considered legally separated for purposes of § 1432(a)(3)." Brissett, 363 F.3d at 134; see also Minasyan, 401 F.3d at 1077 n.14 (quoting this language from Brissett with approval).

Petitioner contends that, at the time of his parents' separation in 1963, Jamaican law did not require or provide judicial proceedings for separation and that his father's desertion of his mother was sufficient to withdraw consent to the marriage and effect a "legal separation."[5] But even if Jamaican law did not provide for a judicial decree of separation until 1969, as Petitioner contends, no dispute exists that Jamaican law has provided a procedure for absolute divorce since 1879 or that Petitioner's mother could have obtained a divorce under that law. Furthermore, Petitioner's mother did not emigrate to the U.S until 1969 and did not naturalize until 1977; at that time, Jamaican law did provide for separation by judicial decree. See Morgan, 432 F.3d at 233. The record is unclear about which U.S. state(s) had jurisdiction over Petitioner's parents' marriage after his mother's emigration, but no evidence exists that she obtained formal recognition of the termination of her marriage in any U.S. jurisdiction before her 1992 Florida divorce decree.

_____

[5]Petitioner points to Brandon v. Brandon, 8 J.L.R. 199, 202 (1963) as support for his claim that Jamaican common law regarded "separation by mutual consent" as "legal separation." But Brandon merely addressed whether the parties' separation constituted desertion, thus providing grounds for a divorce. Id. at 199. Brandon did not recognize "separation by mutual consent" as having an independent legal effect and, in fact, indicated that such a separation was not grounds for divorce. See id at 202-03 (concluding that respondent had deserted the petitioner, and that petitioner was therefore entitled to a divorce, but noting that "had the respondent . . . left the home upon being told she could go by the petitioner then the separation would have been by mutual consent").

8

Petitioner also points to his father's subsequent remarriage – which was officiated by a "Marriage Official" and recorded in the registry – as a "formal act" establishing that his parents were legally separated under Jamaican law. But Petitioner has provided no authority for the proposition that Jamaica would recognize Petitioner's father's subsequent marriage as legally ending the first marriage. Nor has Petitioner shown that Jamaican law would have regarded the second marriage as valid at all when it occurred, despite the ostensible government involvement in issuing a marriage certificate; in fact, Petitioner's counsel conceded at oral argument that the second marriage was bigamous under Jamaican law. U.S. courts would also generally regard the first marriage as continuing and the second marriage as invalid. See generally, 55 C.J.S. Marriage §§ 18 ("Generally, a person who has contracted a valid marriage is incapacitated, while such valid marriage remains undissolved by death, divorce, or otherwise, to contract a subsequent marriage."), 59 ("[T]he presumption in favor of a second marriage that the prior marriage was dissolved . . . may be rebutted by facts tending to show that no divorce in fact was granted . . . or where there is a failure to show dissolution of the first marriage.").[6] Thus, we cannot say that Petitioner's

_____

[6]That Petitioner's mother was unsure about the authenticity and legality of her husband's second marriage, that Petitioner's sister stated that her father had remarried without divorcing her mother, and that a Florida court later granted Petitioner's mother a divorce also support the proposition that

father's invalid second marriage effected a "legal separation" of Petitioner's parents.

Because no evidence exists that Jamaica – or a state exercising jurisdiction over Petitioner's parents' marriage before his mother's naturalization – regarded Petitioner's parents as separate legal entities after their separation, Petitioner has failed to satisfy the "legal separation" element of section 237(a)(3). Even if Petitioner's mother, in some sense, had "legal custody" of Petitioner at the pertinent time, her naturalization alone is insufficient to grant Petitioner citizenship. For Petitioner to have acquired derivative citizenship in these circumstances – where his parents were not legally divorced or separated at the time of naturalization – both parents would have had to become naturalized citizens while Petitioner was a minor residing in the U.S.. See INA § 237(a)(1), (4)-(5); 8 U.S.C. § 1432(a)(1), (4)-(5) (conveying citizenship on alien children residing in the U.S. upon "[t]he naturalization of both parents"). Therefore, Petitioner's petition for review of the IJ's and BIA's orders is denied.

**DENIED.**

---

the first marriage remained valid after Petitioner's father's remarriage.